Bullard, J.
The plaintiff, who is the wife of Stephen E. Cuny, being co-proprietor with her husband’s brother, P. M. Cuny, of a tract of land in the parish of Rapides, sold her share to the latter for about $35,000, and retained a mortgage to secure the payment of the price. The husband assisted her in the act. In the same act, she authorizes her vendee to mortgage the land to James Brown to secure the payment of about $48,000, alleged to be due by him, and she agrees to give a priority to such mortgage over hers, as vendor. The principal object of the present action against Brown, the second mortgagee, is to annul that mortgage so far as it operates to her prejudice, and to'be relieved against the effect of her agreement to accord to Brown a preference over hers : on the ground, that a part of the debt thus secured, was due by her husband, and that the contract is null, because prohibited by law. She alleges, in her petition and supplemental petition, that the pretended sale to P. M. Cuny, and the postponement of her right of mortgage in favor of the defendant Brown, was intended, and has the effect, to bind her as surety for her said husband, to the amount of the debt due by him *83 to Burke, Watt & Co., which was included in the mortgage from Cuny to Brown.' She further alleges, that she was not duly authorized to enter into such a contract, and that the same was, as to her, without consideration and void.
It is in proof, that the debt due by Philip M. Cuny to Burke, Watt <fe Co., amounted to about $42,000 : that S. E. Cuny, the plaintiff’s husband, owed them, at the same time, a note of about $3000, endorsed by Solibellas, and that C. I. Cuny, another brother, owed about $2600; making in the aggregate about the sum of $48,000, for which the new mortgage was given directly to Brown as the assignee of Burke, Watt &. Co., and that Burke, one of the partners, was the agent of Brown in effecting the agreement. There is, therefore, no doubt on our minds from the evidence in the record, that a part of the debt secured by the mortgage to Brown was the amount due by Stephen E. Cuny, the husband. It is equally clear, that there was no consideration of a pecuniary nature, personal to the plaintiff, for the contract by which she agreed to postpone her rights to those of Brown, as the transferee of Burke, Watt & Co.
In the progress of the trial the plaintiff’s counsel prayed the court to instruct the jury, that if from the evidence, they were satisfied that in the transaction between the plaintiff and Philip M. Cuny, her husband, S. E. Cuny had an' interest in the matter which conflicted with hers, he was incapable in law to give his consent to her making the sale, and postponing her lien. But the court instructed the jury, on the contrary, that the plaintiff’s husband could validly authorize his wife to postpone her mortgage, although he might have an interest in the matter which conflicted with hers. To this charge the plaintiff’s counsel took a bill of exceptions, which brings to our notice the most important question in the cause. The verdict of the jury under that charge, was adverse to the plaintiff, and she appealed.
We think the court erred in laying down the law in such broad terms. Even admitting that every species, or degree, of interest in the husband, adverse to that of the wife, would not render his authorization to her to contract, invalid; yet it is clear that, if that interest consists in giving security to his creditor for a debt of his contracting, at the expense of the wife, and by a sacrifice *84 of her rights for his benefit, his authorization will not remove the disability created by art. 2412 of the Code. This principle does not rest alone upon what fell from the court in the much contested case of Gasquet v. Dimitry ; it is expressly sanctioned by art. 1784 of the Code, which declares, that the incapacity of the wife to become surety for the husband’s debt is not cured by the express assent of the husband. The Judge ought, in our opinion, to have instructed the jury, that if the purpose of the contract was to render the wife, in effect, surety for her husband’s debt, his authorization did not render her contract valid.
The principal question, therefore, which the case presents is, whether the plaintiff did, by her contract "with Philip M. Cuny, bind herself for a debt of her husband’s contracting, according to a just interpretation of the article of the Code above referred to. In the case of Gasquet v. Dimitry, we came to a conclusion to which we have since adhered, and which we still regard as correct, that, although the obligation contracted by the wife may not be co-extensive with that of the debtor, her husband; although she may not be personally bound, and has only subjected her property to a certain extent to be seized and sold for the benefit of the husband’s creditor, such contract is in contravention of the prohibition in the Code. This prohibition cannot be evaded by disguising the suretyship under the specious form of some other contract, which the wife might validly contract. We will endeavor to look through such disguises, and to give effect to the provisions of the law for the protection of the rights of married women. In the case now before us, the sale to Philip M. Cuny, and the mortgage to Brown, may be regarded as one transaction. In the sale, the future mortgage was contemplated and authorized. The debt to be secured by that mortgage was about $6000 more than the amount due by Philip M. Cuny to Burke, Watt & Co. If we add the sum due by the husband, and his other brother, we find about the amount of the mortgage. When the husband was first applied to, to authorize his wife to contract, he refused. The agent of Brown, one of the partners of the house of Burke, Watt &. Co., threatens to sue him, and his accommodation endorser, on his note. It is true it is not shown *85 that this threat was communicated to Stephen E. Cuny, but'we find him shortly after in possession of his note, cancelled, and he yields his assent to his wife’s contracting. There is no evidence that the note had been paid, and nemo facile prcesnmiter donare. It appears evident to us, that the amount is still due to Brown, and is included in the mortgage given by P. M. Cuny, to which the wife yielded her right of prior mortgage and privilege as vendor. The power of attorney from Nicholson to Burke, to accept the mortgage, speaks only of a debt of $45,000, as due by P. M. Cuny, and the sum stated in the mortgage is $48,781, besides interest.
Here, then, we have the case of a married woman, who sells her property for $35,000, retains a mortgage to secure the payment of the price, and at the same time agrees to permit her ven-dee to mortgage it for a much larger amount than its estimated value, and to give such mortgage a priority over hers; and that, without any pecuniary consideration, and without any supposa-ble motive, unless it was to relieve her husband, and his friend and endorser, from the importunity of his creditor, and to furnish, at her own risk, a more ample security for the payment of the debt thus due by her husband.
It has been argued by the counsel for the appellee, that even if we suppose the debt due by S. E. Cuny to have formed a part of the price for which the wife sold her land, and that the sum acknowledged in the deed to have been paid in hand, was, in fact, the same debt, yet nothing in law prevents the wife from paying her husband’s debts, and that the counsel for the defendants are ignorant of any law of Louisiana which could either authorize her to reclaim the money, or to rescind the sale; and he refers to the case of Gasquet v. Dimitry. Upon looking again-into that case, we find that the presiding Judge, who expressed the opinion of a majority of the court, says: “ Perhaps she may sell her mortgage validly. But such contracts must be supposed to be made for her own benefit, or for the mutual benefit of herself and husband, by which she calculates on gain. Yet, admitting these contracts to be completely binding on her, it does not follow as a corollary, that she could give her property in payment of the debts of her husband, without being able to rescind the *86 the contract,” <fcc. 9 La. 600. The other Judge, then composing a part of the majority, and who is the organ of the court on the present occasion, expressed a doubt whether a wife, who.should have paid her husband’s debts, would not be entitled to the con-dictio indebiti, and cited the 16th law of the 1st title of Po-thier’s Pandects, to show, that by the Roman law, the wife could, under the iSenatusconsultum Velleianum, recover back property sold by her to her husband’s creditors, in discharge of his debt.
Thom,as and Flint, for the appellant.
Dunbar, Hyams and Elgee, for the defendants.
The objection, that the petition sets forth contrary grounds of action, and seeks remedies inconsistent with each other, comes, we think, too late after the plea of the general issue, and the admission of evidence without objection, going to show the real character of the transaction. Nor can the defendants contest the title of the plaintiff in this suit. His own right rests upon the hypothesis, that the land was the paraphernal property of Mrs. Cuny.
Upon the whole, we conclude that the plaintiff is entitled to relief.
It is, therefore, ordered and decreed, that the judgment of the District Court, be reversed, and it is further adjudged and decreed, that so much of the contract between P. M. Cuny and James Brown and the plaintiff, as accords to the mortgage in favor of Brown a priority and preference over that of the plaintiff, Judith A. L., wife of S. E. Cuny, be rescinded and annulled ; and that her prior mortgage be reinstated as if no renunciation had taken place; and that the appellees pay the costs of this appeal, and of the court below.